UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

    v.

Terrence Terrell Mathews,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 13-79 ADM/AJB

_____

Julie E. Allyn, Esq., United States Attorney's Office, Minneapolis, MN, for Plaintiff.

Katherian D. Roe, Esq., Office of the Federal Defender, Minneapolis, MN, for Defendant.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Terrence Terrell Mathews' Objections [Docket No. 56] ("Obj.") to Chief Magistrate Judge Arthur J. Boylan's September 10, 2013, Report and Recommendation [Docket No. 50] ("R&R"). In the R&R, Judge Boylan recommends denying: (1) Mathews' Motion to Suppress Statements, Admissions, and Answers [Docket No. 20]; (2) his Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 21]; and (3) his Motion for Hearing Pursuant to Franks v. Delaware [Docket No. 32]. After a thorough de novo review of the record and for the reasons stated below, Mathews' Objections are overruled and Judge Boylan's R&R is adopted.

## II. BACKGROUND

In January 2013, Melanie Hines contacted the Brooklyn Park Police Department to report a stolen firearm. See Obj. 13. In that conversation and in subsequent conversations, Hines identified Mathews, a felon, as a possible suspect in the theft investigation. Prelim. Franks Hr'g

Tr. [Docket No. 55] ("Tr.") 12-13. Hines and Mathews have a long, contentious romantic relationship, and have a child together. See id. at 5.

Later in January, a Brooklyn Park Police Officer used a trained police canine to conduct a "narcotic sniff" in the hallway area outside of Mathews' mother's apartment, where Mathews resided. The dog alerted for the detection of narcotics. Then, in February 2013, the officer returned with the same police dog and conducted a second narcotic sniff. The dog again detected narcotics at the door to Mathews' mother's apartment. When the officer led the dog to four other apartment doors in the same area, the dog did not detect narcotics.

Less than 72 hours later, on February 25, 2013, Judge Lloyd Zimmerman of the Hennepin County District Court issued a search warrant authorizing a search of the apartment unit in which Mathews resided, along with the corresponding garages and storage areas. Among other things, the warrant allowed a search for controlled substances, including heroin and firearms.

Officer Andrew Suerth swore to the affidavit supporting the warrant application. Suerth described receiving information from a confidential informant ("CI"), who stated Mathews possessed and/or distributed controlled substances, including heroin, and that Mathews was involved in illegal firearms possession. The CI was later publicly disclosed as Hines. In the affidavit, Suerth also described Mathews' criminal history, police observations, and the results of the canine sniffs.

On February 27, 2013, the officers executed the warrant for the apartment and located drug paraphernalia, a digital scale, trace amounts of heroin, and Hines' firearm. Tr. 106-07. The officers arrested Mathews. Later that day at the Brooklyn Park jail, Suerth read Mathews the

Miranda rights advisory, after which Suerth conducted an interview. Mathews did not ask for the questioning to stop, nor did he request an attorney.

On April 15, 2013, Magistrate Judge Janie Mayeron issued a warrant authorizing the collection of Mathews' DNA via a buccal cotton swab used to obtain saliva and skin cells. The warrant was executed the next day.

On May 5, 2013, Mathews moved to suppress the statements he made in the February 27, 2013, interview. He also moved to suppress all evidence found in connection with the February 27, 2013, search warrant, arguing the Government lacked probable cause. Thereafter, Mathews filed a motion for a hearing under Franks v. Delaware, 438 U.S. 154 (1978). An evidentiary hearing under Franks allows a defendant to invalidate a warrant if the defendant can demonstrate law enforcement obtained the warrant through deliberately false statements, or statements made with reckless disregard for the truth. To justify such a hearing, the defendant must make more than conclusory allegations, and must also make an offer of proof. Id. at 171.

On August 7, 2013, Judge Boylan held a preliminary hearing to determine whether the Court should hold a formal Franks hearing. The judge allowed the parties to elicit testimonial evidence from Hines and from law enforcement witnesses. Hines confirmed that she told officers about identifying Mathews as a suspect in the theft of her firearm. See Tr. 12-13. However, Hines denied telling law enforcement that Mathews was involved in the possession or distribution of drugs. Id. at 16-18. Hines also testified that she told Officer Suerth she did not want to be treated as a CI, and was unaware her information had been recited in Suerth's affidavit. Id. at 20.

On September 10, 2013, Judge Boylan issued the R&R, in which he recommends

3

denying Mathews' evidentiary motions and also recommends declining conducting a Franks hearing. Judge Boylan concluded that even if all of the information allegedly derived from Hines is disregarded, the narcotics sniff is still sufficient to uphold the warrant's validity. As a result, all subsequently obtained evidence is admissible.

### III. DISCUSSION

#### A. Standard of Review

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

#### B. Defendant's Objections

Mathews objects to the R&R on two major grounds. First, Mathews argues the narcotics sniff was a warrantless search conducted in violation of the Fourth Amendment. Obj. 1. Second, Mathews argues that Officer Suerth intentionally or recklessly included false information in the warrant affidavit. Namely, Mathews argues: Suerth misrepresented what he learned about Mathews' possible drug activity from Hines; Suerth omitted Hines' possible motives and bias in making a statement to the police; and, finally, Suerth greatly overstated the firearms-related information Hines provided. See Obj. 6-14. When both the narcotics sniff and the unreliable information are removed from the warrant, Mathews argues, insufficient evidence remains to establish probable cause. As a result, Mathews argues both motions to suppress should be granted, as the evidence derived thereafter is fruit of a poisonous tree. See Wong Sun

4

v. United States, 371 U.S. 471, 487-88 (1963).

### 1. Search Warrant and Subsequent Evidence

Regarding Mathews' first objection, the Court agrees with Judge Boylan in concluding the narcotic sniff did not violate Mathews' Fourth Amendment rights. In a recent decision discussed by both parties, the United States Supreme Court reaffirmed the Fourth Amendment's protection of homes, describing the home as the "first among equals" when considering restrictions against governmental intrusion. Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013). In Jardines, police officers, acting on an unverified tip, guided a trained police canine around the front porch of the defendant's home. The dog signaled that it detected narcotics, and then indicated the odor's strongest point. Id. at 1413. The officers applied for a search warrant on the basis of this narcotics sniff, and found marijuana on the defendant's property during the subsequent execution of the warrant. Id.

The Supreme Court ultimately concluded that the government had violated the defendant's Fourth Amendment rights. First, the Supreme Court held that Jardines' front porch area was part of the curtilage—the area "immediately surrounding and associated with the home"—and thus protected by the Fourth Amendment. Id. at 1414 (citation omitted). Second, the Court held that the canine sniff was a warrantless search. The Court held that police officers may enter a person's curtilage with the same implied license that any visitor, such as a salesperson, has to approach and knock at the door of a home: to gain the attention of the residents inside. Id. The Court held that introducing a trained narcotics dog violates this limited license. Id. at 1416-17.

The holding in Jardines did not fundamentally alter Fourth Amendment protections over homesteads, and it did not expand Fourth Amendment coverage to common areas outside of an apartment. Eighth Circuit courts, both before and after Jardines, have held that an apartment common area or hallway is not part of a curtilage, and thus does not receive the same Fourth Amendment protection. See United States v. Scott, 610 F.3d 1009, 1015-16 (8th Cir. 2010); United States v. Brooks, 645 F.3d 971, 975-76 (8th Cir. 2011); United States v. Penaloza-Romero, No. 13-36, 2013 WL 5472283, at *7-9 (D. Minn. Sept. 30, 2013). Because they are shared by multiple tenants, no reasonable expectation of privacy arises in such common areas. See Brooks, 645 F.3d at 975-76. The Supreme Court's analysis in Jardines did not alter this conclusion, as the Court relied on the same longstanding principles in describing the privacy expectations that attach to a home's curtilage. See Jardines, 133 S. Ct. at 1415 (holding the curtilage is "intimately linked to the home, both physically and psychologically, and is where privacy expectations are most heightened.") (internal quotations omitted).

Accordingly, the hallway outside of Mathews' apartment is shared by multiple tenants, and certainly not an area "associated with the sanctity of a man's home and the privacies of life." United States v. Dunn, 480 U.S. 294, 300 (1987). Mathews' "apartment hallway contained approximately 40 to 50 apartments and all people in the building had common access to this hallway." Pl.'s Resp. to Obj. [Docket No. 57] 5 (citing Tr. 11). As such, the hallway is not part of the curtilage, and Fourth Amendment protections did not apply. Even if the hallway were to be considered Mathews' curtilage, the officers entered the apartment building with implied, or even express, permission to do so. The building management or ownership had provided police officers with constant access to an outdoor lockbox that contained a building key. R&R at 3.

Thus, the officers had a license to enter; the license was simply not from Mathews.

Because Mathews' first objection is overruled, the second objection becomes moot. The Court will disregard the statements in the warrant affidavit allegedly derived from conversations with Hines, as the truth and accuracy of those statements is disputed. See Walden v. Carmack, 156 F.3d 861, 871 (8th Cir. 1998) (holding the court must set aside deliberately false statements, and statements made with reckless disregard for the truth, and see if what remains establishes probable cause). The narcotics sniff outside Mathews' apartment indicated the presence of illegal narcotics, and the results of a narcotics sniff alone may establish sufficient probable cause for a warrant. See United States v. Carrazco, 91 F.3d 65, 67 (8th Cir. 1996); United States v. Sundby, 186 F.3d 873, 875-76 (8th Cir. 1999) ("A dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable."). As a result, the search warrant was based on sufficient probable cause and did not violate Mathews' Fourth Amendment rights. Because the warrant is upheld as valid, the motions to suppress evidence and statements[1] are denied.

**2. Franks Hearing**

Because the search warrant was validly issued even with the exclusion of challenged affidavit statements, a Franks hearing is not warranted in this case. Mathews' motion for a Franks hearing is thus denied.

---

[1] Mathews argued he did not have the assistance of counsel in violation of the Fifth Amendment as one of the grounds Mathews offered in support of his motion to suppress statements. The record indicates Mathews was read the Miranda advisory, did not request counsel, and made his subsequent statements voluntarily, knowingly, and intelligently. See R&R at 4. To the extent this objection raises this challenge again, it is thus denied. Similarly, Mathews does not offer a separate objection to the collection of DNA evidence, so to the extent his motion to suppress evidence may be construed as moving to suppress the collection of his DNA, this objection is also denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Terrence Terrell Mathews' Objections [Docket No. 56] to Chief Magistrate Judge Arthur J. Boylan's September 10, 2013, Report and Recommendation [Docket No. 50] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 50] is **ADOPTED**;

3. Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 20] is **DENIED**;

4. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 21] is **DENIED**; and,

5. Defendant's Motion for Hearing Pursuant to Franks v. Delaware [Docket No. 32] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 25, 2013